Vincent **KERRIGAN** and Lucy Kerrigan

v.

**CLARKE GRAVELY CORP. and Kenvil Power Mower.**

**Civ. No. 74–151.**

United States District Court, M. D. Pennsylvania.

Dec. 9, 1975.

---

Sidkoff, Pincus, Greenburg & Golden, Philadelphia, Pa., for plaintiffs.

Joseph Mullaney, Thos. P. Kennedy, Scranton, Pa., for defendants.

## MEMORANDUM

NEALON, District Judge.

This is a personal injury diversity case in which the defendants are sought to be held liable for injuries caused the wife plaintiff by an allegedly defective snowblower attached to a tractor. Defendant Clark Gravely Corp. (Gravely), the manufacturer of the machine that allegedly caused the injury, is charged with strict liability in tort pursuant to Restatement, Second, Torts § 402A, and breach of express and implied warranties. Defendant Kenvil Power Mower (Kenvil) is charged with having negligently repaired the tractor shortly before the accident which caused the injuries. Presently before the Court is a motion by Kenvil to dismiss (a) for insufficient service of process—Rule 12(b)(5), Federal Rules of Civil Procedure, and (b) for lack of jurisdiction over its person—Rule 12(b)(2).

In support of its motion, Kenvil has submitted an affidavit of Mr. Steve Redan, one of Kenvil's two partners, and, in opposition to the motion, plaintiff relies on a deposition of the same partner. From those documents as well as from the pleadings, the following relevant facts appear. Kenvil is a two-man partnership located in Kenvil, New Jersey approximately 40 miles from Pennsylvania, and engaged in the sale of lawn and garden power equipment—mowers, tractors, power saws, spreaders, etc. It also repairs the machines it sells. As of 1972, the date of the alleged injuries in this case, Kenvil employed a total of approximately 12 persons; this figure includes clerical workers, salesmen and mechanics.

Kenvil has no store, representative, agent or distributor in Pennsylvania. It does no advertising in Pennsylvania, nor does it in any other manner seek to obtain

business from Pennsylvania.[1] Practically all of its sales are made to people within a 15-mile radius of Kenvil, New Jersey, and Kenvil would not normally make a sale to someone living further away than that, because the distance would make the transaction unprofitable in view of the costs of delivery and the distance that would have to be traveled in order to perform warranty work. Kenvil has never made a sale to a Pennsylvania resident, nor has it ever shipped any merchandise or goods into this state.

Kenvil carries several national brands of power equipment, such as Lawn Boy Power Mowers, and Gravely tractors, the kind of vehicle involved in the accident at issue in this case. Kenvil has a standard franchising arrangement with Gravely, which provides, *inter alia,* that Kenvil will perform the repair and maintenance work covered by Gravely's warranty on the Gravely products which it sells. In addition, Gravely reimburses Kenvil for its advertising of Gravely products in local newspapers and on local radio stations, and also furnishes Kenvil with Gravely brochures on which Kenvil stamps its name and address. The Kenvil mechanic who allegedly performed the repairs on plaintiffs' tractor shortly before the accident at one time attended a Gravely training course which was conducted in either Pennsylvania, New York or New Jersey. Gravely is not a Pennsylvania corporation, but it does substantial business here.

Plaintiffs are Pennsylvania residents who purchased their Gravely tractor from someone other than the defendant Kenvil. Plaintiffs had occasion to deal with Kenvil when they could not obtain service on their tractor from their local dealer in Pennsylvania. They appealed to a Gravely sales representative, who called Kenvil and asked if Kenvil could perform the necessary repairs. Kenvil agreed, and the Kerrigans took their machine to Kenvil in New Jersey, and picked it up there once the repairs were performed. Except for delivery and pickup of the machine by the plaintiffs at Kenvil's place of business in New Jersey, Kenvil has had no contact with the plaintiffs.

The complaint in this case was served on Kenvil by the United States Marshal, who sent a copy of the complaint to Kenvil at its New Jersey address by certified mail, and a copy to the Secretary of the Commonwealth of Pennsylvania in Harrisburg.

■ Kenvil's contention that service of process in this case was defective requires little comment. Rule 4(d)(7) of the Federal Rules of Civil Procedure provides that, under the circumstances of this case, service is to be made "in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of the state." Pennsylvania's long-arm statute, 42 P.S. § 8301 et seq., provides that "Process directed to persons under this chapter shall be served . . . upon the Department of State, by sending by registered or certified mail, postage prepaid, a true and attested copy of such process . . . and by sending to the defendant, by registered or certified mail, postage prepaid, a true and attested copy thereof . . . addressed to such defendant at his last known address." 42 P.S. § 8307. As this procedure was followed in

---

**1.** There is evidence in the record that Kenvil has occasionally had advertisements on radio station WMTR in Morristown, New Jersey, a city in central New Jersey that is further from Pennsylvania than Kenvil. Deposition of Steve Redan at p. 30. Plaintiff maintained at oral argument on the instant motion that these radio ads were received by listeners in Pennsylvania and that therefore Kenvil should be regarded as having solicited business from Pennsylvania. Even if it were determined that Kenvil ads on New Jersey radio stations were picked up by listeners in Pennsylvania, a point on which there is nothing in the record of this case other than the representation of counsel at oral argument, there is no evidence to refute Mr. Redan's statements that Kenvil does not solicit business from as far away as Pennsylvania and that Kenvil has never made a sale to a Pennsylvania resident. Thus, the mere receiving of defendant's radio ads in Pennsylvania would not, under the facts of this case at least, amount to any significant contact between the defendant and Pennsylvania.

this case, Kenvil's contention that service was insufficient is incorrect.

Kenvil's argument that this Court lacks personal jurisdiction over it requires closer attention. This argument raises two issues: (a) the statutory construction issue of whether the Pennsylvania long-arm statute contemplates the assertion of jurisdiction over Kenvil in this case, and (b), if it does contemplate jurisdiction, the constitutional issue of whether Kenvil can be subjected to the jurisdiction of a court in Pennsylvania consistently with due process.

■ With respect to the statutory construction issue, it seems clear that the Pennsylvania statute purports to confer jurisdiction over Kenvil here. The language of the statute plainly embraces the type of activity alleged in the complaint—actions performed by an individual outside the state which result in harmful consequences within the state:

> "Any nonresident of this Commonwealth who, acting outside of this Commonwealth, individually, under or through a fictitious business name, or through an agent, servant or employee, shall have caused any harm within this Commonwealth . . . shall be subject to service of process in any civil action or proceeding . . ." 42 P.S. § 8305

The statute has been construed to apply to tortious activity outside the state which results in harm within the state, *Aamco Automatic Transmissions, Inc. v. Tayloe,* 368 F.Supp. 1283, 1296 (E.D.Pa.1973), and I conclude similarly that Kenvil falls within the jurisdictional reach contemplated by Pennsylvania's long-arm statute.

The question remains whether Kenvil may constitutionally be made subject to the jurisdiction of a court in Pennsylvania. The current doctrine of the constitutional limits of personal jurisdiction has its origin in the landmark case of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Supreme Court held in that case that in order for a valid *in personam* judgment to be rendered over a nonresident, due process required the

existence of "certain minimum contacts" between the nonresident and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.,* at 316, 66 S.Ct. at 158. In determining what "minimum contacts" are necessary to subject a nonresident to suit within the forum, the Court stated that the test "cannot be simply mechanical or quantitative," but

> "whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure . . . "

*Id.,* at 319, 66 S.Ct. at 160. The necessary contacts were found in *International Shoe* by virtue of the systematic and continuous business activities of the defendant within the forum state, activities which included the employment of several salesmen within the state, and the shipment of merchandise into the state. Furthermore, those activities formed the basis of the obligation which was sued upon in *International Shoe* —unpaid contributions to the state unemployment compensation fund exacted by state statutes on the basis of wages paid annually by an employer for his employees' services within the state.

In *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Court extended the *International Shoe* doctrine by holding that the Constitution permits the assertion of personal jurisdiction over a corporation which carries on a continuous and systematic, albeit limited, part of its business in the forum state, even though the cause of action sued upon did not arise in the forum state and did not relate to the corporation's activities there. The defendant was a mining company which operated gold and silver mines in the Philippines. Plaintiff, a nonresident of Ohio, brought suit in an Ohio state court to recover dividends claimed to be due her as a stockholder and damages caused by the company's failure to issue to her certificates for several thousand shares

of its stock. Even though the defendant's actions forming the basis of the lawsuit did not occur in Ohio and did not relate directly to the defendant's activities there, the Court held that in view of the defendant's substantial and continuous business activity within Ohio, activity which included directors' meetings, business correspondence, banking, stock transfers, payment of salaries and purchasing of machinery, it would not violate due process to subject the defendant to suit in an Ohio court.

*McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) added a new dimension to the doctrine. In that case, suit was brought in California against a foreign insurance company on a policy issued to a resident of California. The contract had been delivered in California, the premiums were mailed from there and the insured was a resident of California when he died. Although the defendant did no other business in California, the Court found the necessary "substantial connection" to the forum state in the fact that the contract itself had substantial connections to California, and held that the company was subject to a suit in that state on the contract. In the course of its opinion the Court stated, "It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims." *Id.,* at 223, 78 S.Ct. at 201. The Third Circuit has articulated the *McGee* test as whether "the cause of action had a 'substantial connection' with . . . " the forum state. *Bernardi Brothers, Inc. v. Pride,* 427 F.2d 297, 299 (3d Cir. 1970).

Finally, in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Supreme Court's most recent in depth treatment of the constitutional limits of personal jurisdiction, the Court refined somewhat the liberalizing trend of *International Shoe Perkins* and *McGee. Hanson* was a suit in a Florida court to determine the validity of the exercise of a power of appointment under a trust agreement which had been established in Delaware by a settlor who later became domiciled in Florida. The Florida courts held that they had jurisdiction over the Delaware trust company which was the trustee of the trust, and then proceeded to determine the validity of the power of appointment. The Supreme Court reversed, holding that there were insufficient contacts between the Delaware trust company and the state of Florida for a Florida court to assume jurisdiction over the trust company consistently with due process. The Court pointed out that the defendant trust company had no office in Florida and transacted no business there; that none of the trust assets had ever been held or administered in Florida; that the record disclosed no solicitation of business by the trustee in Florida either in person or by mail; and that the cause of action in the case did not arise out of an act done or transaction consummated in the forum state, in that the action involved the validity of a trust agreement that was entered without any connection to the forum state. The Court was unpersuaded by the argument that the necessary minimum contacts could be found in the trustee's mailing of the trust income to the settlor in Florida, the several bits of trust administration carried on by the settlor from Florida, and the execution of the power of appointment in Florida. In summarizing its holding, the Court stated:

> "The application of . . . [the] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

*Id.,* at 253, 78 S.Ct. at 1240.

With this background in mind, I now turn to an examination of the facts of this case. The only significant contact appearing in the record between Kenvil and Pennsylvania are Kenvil's dealings with the plaintiffs which form the basis of the com-

plaint against Kenvil.[2] On their own initiative, plaintiffs, residents of Pennsylvania, brought their tractor to defendant's shop in New Jersey for repairs and picked it up there once the work was finished and returned with it to Pennsylvania. Thus, Kenvil's sole contact with the forum state in this case is its repair of an item belonging to residents of Pennsylvania, without ever having been physically present in the state itself, and without having solicited the business from the Pennsylvania residents. Kenvil has no other nexus with Pennsylvania. This does not seem to be sufficient contact to render the maintenance of this suit consistent with " 'traditional notions of fair play and substantial justice,' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Nor does it appear to constitute "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

Furthermore, it cannot be said that the cause of action in this case has a substantial connection with the forum state so as to satisfy the *McGee* test as articulated by the Third Circuit in *Bernardi Brothers, Inc. v. Pride, supra. McGee* involved a life insurance contract which was solicited from a California resident by a foreign corporation. The contract was delivered in California, the premiums were mailed from there and the insured was a resident of California when he died. The suit was for breach of contract because of the insurance company's refusal to pay the proceeds of the policy upon the death of the insured. In the instant case, by contrast, only one element of plaintiff's cause of action against Kenvil occurred in the forum state—the damage caused by Kenvil's alleged negligence. The transaction between plaintiff and Kenvil was solicited by plaintiff in New Jersey, and the allegedly negligent repair work occurred in New Jersey. This is insufficient to give the cause of action a "substantial connection" with Pennsylvania.

■ Nevertheless, there is a line of cases under which it may be argued that Kenvil should be subject to the jurisdiction of this Court. Those cases have established the so-called "foreseeable use" test which in effect provides that when a defendant undertakes an act that is such that he should foresee consequences in another state, then jurisdiction may properly be asserted over him. *Williams v. Vick Chemical Co.,* 279 F.Supp. 833 (S.D.Iowa 1967); *See, e. g., Atkins v. Jones and Laughlin Steel Corp.,* 258 Minn. 571, 104 N.W.2d 888 (1960); *Met-*

2. Plaintiffs argue that Kenvil's relationship with Gravely, itself a corporation with a substantial connection to Pennsylvania, supplies the necessary minimum contacts with respect to Kenvil. However, Kenvil is merely a single, and, it would seem, relatively small, franchisee of Gravely, and Gravely's activities in Pennsylvania are unrelated to Kenvil, which operates in a market that extends to a radius of 15 miles from its location in New Jersey, an area that is entirely within the state of New Jersey. Gravely's activities in Pennsylvania may not be attributed to Kenvil. As the Supreme Court has stated, "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Plaintiffs also contend that the fact that a Kenvil mechanic attended a Gravely course in Pennsylvania constitutes the necessary connection between Kenvil and this state. The short answer to this contention is that the only part of the record bearing on the location of the Gravely school attended by the Kenvil mechanic is the statement in Redan's deposition that the school may have been located in New Jersey, Pennsylvania or New York. Deposition of Steve Redan at p. 36. Inasmuch as plaintiffs have the burden of proving jurisdiction, *see Optico Corporation v. Standard Tool Co.,* 285 F.Supp. 46 (E.D.Pa.1968), they have failed to establish the factual premise of their argument, that the school was located in Pennsylvania. More to the point, even if it were determined that the mechanic did attend a Gravely school in Pennsylvania that would be merely a peripheral occurrence, not "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). *See Scheidt v. Young,* 389 F.2d 58, 60 (3d Cir. 1968). As such it would be insufficient to sustain jurisdiction over Kenvil.

al-Matic Co. Inc. v. 8th Judicial Court of Nevada, 82 Nev. 263, 415 P.2d 617 (1966). See generally, Comment, Long Arm & Quasi in Rem Jurisdiction and the Fundamental Test of Fairness, 69 Mich.L.Rev. 300, 313 (1970). The seminal case is Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). In Gray, the defendant manufactured a valve in Ohio which had to be installed in a water heater in Pennsylvania which in turn was sold to plaintiff. The heater exploded in Illinois, allegedly as a result of a defect in the valve, and the plaintiff brought suit in that state. The manufacturer challenged jurisdiction on constitutional grounds, stating that it did no business in Illinois, and it did not appear in the record that the defendant had any contact with Illinois other than the manufacturing of the valve, which in the course of commerce came to rest in Illinois. The Illinois Supreme Court held that jurisdiction existed over the Ohio defendant because "as a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products." 22 Ill.2d at 442, 176 N.E.2d at 766. In reaching this conclusion, the Gray court inferred from the record substantial use and consumption within the state of appliances incorporating defendant's valves. Consequently, the court concluded that:

"[t]o the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves."

Id., at 442, 176 N.E.2d at 766.

The emphasis on what the defendant should reasonably foresee once he has placed a product into the stream of commerce is in line with the realities of modern commercial transactions and should, in most cases, produce desirable results. See Comment, Long-Arm and Quasi in Rem Jurisdiction and the Fundamental Test of Fairness, supra, at 313. However, a blanket application of this "foreseeable use" test may produce unfair results when applied in particular situations. As stated above, the due process question cannot be answered by applying a mechanical test, but must be determined on a case by case basis according to what is fair and reasonable under particular circumstances. The facts of the instant case bring this point home with force.

Applying the foreseeable use test to this case, it could be argued that because Kenvil knew that plaintiffs were Pennsylvania residents when it worked on their tractor and knew that plaintiffs would return the machine to this state once the repairs were completed, it is reasonable to assume that Kenvil would contemplate that the harmful consequences of its negligent repairs would occur in Pennsylvania. Thus, the argument would conclude, it would also be reasonable to subject Kenvil to jurisdiction here.

However, this argument overlooks the Supreme Court's caveat that there are "territorial limitations on the power of the respective States." Hanson v. Denckla, supra, 375 U.S. at 251, 78 S.Ct. at 1238. Taken to its logical conclusion, it would subject any non-resident business, which by its nature has interstate ramifications, to the in personam jurisdiction of any state where the business's product comes to rest and causes injury. Cf. Erlanger Mills v. Cohoes Fibre Mills, 239 F.2d 502, 507 (4th Cir. 1956); Uppgren v. Executive Aviation Services, Inc., 304 F.Supp. 165, 170 (D.Minn. 1969); Jack O'Donnell Chevrolet, Inc. v. Shankles, 276 F.Supp. 998 (M.D.Ill.1967). Such a per se rule can produce consequences which offend " ' traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, supra, 326 U.S. at 316, 66 S.Ct. at 158.

This observation seems particularly appropriate in the instant case. Here, no substantial contacts or ties between Kenvil and Pennsylvania have been established. Indeed, the sole connection between the defendant and the forum state is the fact that on one occasion Kenvil repaired a tractor

belonging to Pennsylvania residents, who brought the tractor to Kenvil's place of business in New Jersy and picked it up there once the work was finished. Furthermore, Kenvil is a small operation whose normal course of business has little, if any, interstate ramifications. Its sales are substantially limited to customers who live within a radius of 15 miles; it does not advertise outside of that radius; and it does not in any other way attempt to solicit business from a wider area. Its contact with Pennsylvania residents on the occasion giving rise to this lawsuit appears to have been an isolated, unusual event that stands out as an exception to its normal course of business. This is in marked contrast to the defendant in *Gray,* a manufacturer about whom the Illinois Supreme Court concluded that "it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State." 176 N.E.2d at 766. In view of these facts, I find that to subject Kenvil to the jurisdiction of this Court in this case would offend " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington, supra,* 326 U.S. at 316, 66 S.Ct. at 158. While it is true that "very minimal contacts are required to satisfy due process, particularly in the jurisdictional context [,]" *Columbia Metal Culvert Company, Inc. v. Kaiser Industries Corporation,* 526 F.2d 724, 730 (3d Cir., Nov. 3, 1975), it is also true that "it is a mistake to assume . . . [that there are no longer any] restrictions on the personal jurisdiction of state courts." *Hanson v. Denckla, supra,* 357 U.S. at 251, 78 S.Ct. at 1238. It is still "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253, 78 S.Ct. at 1240. Because I conclude that

there has been no such act of Kenvil's demonstrated in this case, the motion to dismiss for lack of personal jurisdiction must be granted.[3]

---

**3.** At least three cases in this Circuit have found that Section 8305 of the Pennsylvania long-arm statute may not constitutionally be employed to invoke personal jurisdiction over a defendant whose only contact with Pennsylvania was the fact that the injury caused by his allegedly tortious conduct, conduct which occurred in another state, was suffered in Pennsylvania. *Stifel v. Lindhorst,* 393 F.Supp. 1085 (M.D.Pa. 1975); *McAndrew v. Burnett,* 374 F.Supp. 460 (M.D.Pa.1974); and *Aamco Automatic Transmissions, Inc. v. Tayloe,* 368 F.Supp. 1283 (E.D. Pa.1973).