**PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY**

v.

**TOWNSHIP OF GLOUCESTER.**

Civ. A. No. 79–3609.

United States District Court, E. D. Pennsylvania.

July 24, 1980.

Barry M. Sklar, Philadelphia, Pa., for plaintiff.

Michael A. Valenza, Philadelphia, Pa., for defendant.

OPINION

JOSEPH S. LORD, III, Chief Judge.

This is a diversity action for breach of contract. Before me is the motion of the

---

Township of Gloucester to dismiss the complaint for lack of in personam jurisdiction. After an evidentiary hearing I find the following facts. Plaintiff, Pennsylvania Manufacturers' Association Insurance Company (PMA) is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. Defendant Township of Gloucester (Township) is a New Jersey municipal corporation having its principal place of business in Camden County, New Jersey.

In 1975 the Township purchased a Workmen's Compensation and Employer's Liability insurance policy issued by PMA. A dispute over the payment of premiums arose and on August 29, 1979 PMA commenced this action with the filing of a complaint in assumpsit in the Court of Common Pleas of Philadelphia County demanding judgment in the amount of $31,538 against the Township. The Township then removed the action to this court. *See* 28 U.S.C. § 1441(b).

The parties do not seriously dispute the basic facts, but rather disagree over their significance. It is clear that from the Township's perspective all of the pertinent events transpired in New Jersey. The undisputed evidence is that the Township does not regularly do business in the Commonwealth of Pennsylvania and that the negotiations leading to the issuance of the policy in question took place entirely in New Jersey. The policy was procured for the Township by Louis Joyce, an independent insurance broker, whose place of business is in Blackwood, New Jersey. At all times the defendant paid premiums and presented claims at PMA's New Jersey District Office located in Pennsauken, New Jersey.[1] At no time did any agent of the Township enter Pennsylvania for the purpose of transacting any business with PMA.

The chain of events leading to the issuance of the policy began with a recommendation to the Township Council by the Township Manager, William Morrison, that he be authorized to seek a workmen's compensation policy from PMA. The authorization was granted. At the time, Mr. Morrison had only recently ended three years of employment in the accounting department of PMA's main office in Philadelphia. Mr. Morrison, who is now self-employed, was subpoenaed by PMA to appear at the hearing on the present motion. He testified that after receiving authorization from the Council, he asked Mr. Joyce to "get something" with PMA. Mr. Joyce then arranged a series of meetings between township officials and representatives of PMA to negotiate policy terms. These negotiations all took place in New Jersey, either in Gloucester or at PMA's New Jersey District Office. The salesperson representing PMA in the transaction was Thomas A. Sloan, an Account Executive in the Pennsauken District Office.

Several witnesses testified on behalf of the plaintiff that a PMA policy does not become effective until it is finally approved by the main office. It is uncontroverted that PMA's main office is located in Philadelphia and that all underwriting functions are performed there. The Pennsauken District Office, by contrast, is a service office that negotiates the sale of insurance policies and receives and reviews claims for losses, subject to the supervision of the main office. The procedure for issuance of a policy is that the salesperson presents a quotation from the underwriting services department of the main office to the prospective insured. The insured may then accept the quotation and complete an application, but the insurance policy cannot take effect until finally approved by the underwriting department. Only after this final approval does the policy "issue," according to PMA's witnesses.

If this is indeed PMA's normal procedure it apparently was not followed in this case. The Township first became insured under a PMA binder ordered and signed by Thomas Sloan. On its face the binder provides that

---

1. It appears that the District Office was previously located in Bordentown, New Jersey and then moved at some unknown time to Pennsauken. Since both locations are in New Jersey, the difference here is immaterial.

it was issued June 23, 1975 and became effective July 1, 1975. By an internal "speedagram" dated July 1, 1975 to Mike Murphy, a PMA employee at the main office, Mr. Sloan requested that the Township's policy be "issued effective 7/2/75." Such a policy was issued, effective July 2, 1975, but apparently without prior underwriting approval. The "speedagram" bears the notation "received July 03, 1975 Underwriting Services," the day after the policy became effective. PMA did not explain at the hearing how, if underwriting approval is a prerequisite to issuance, a policy could be approved, issued and take effect all before it reached the underwriting department.

PMA raises two arguments to support its invocation of the in personam jurisdiction of this court over the Township of Gloucester. The first argument is that all of the important events giving rise to the cause of action occurred in Pennsylvania. The decision to issue the policy and what premiums to charge occurred in Pennsylvania, even the breach of contract occurred in Pennsylvania, according to PMA, when it failed to receive the premiums when due. The second argument, somewhat related to the first, is that because the policy issued only after final approval by PMA's underwriting department in Pennsylvania, the contract was formed in this jurisdiction. Based on the facts before me and consideration of the applicable law, I find these arguments unavailing. Indeed, the case is not even close.

Pennsylvania permits its courts to exercise long arm jurisdiction to the fullest extent allowed by the Constitution; hence the question in this case is whether the Township has exhibited constitutionally sufficient "minimum contacts" with Pennsylvania. *See* 42 Pa.C.S.A. § 5322(b). The principles of minimum contact analysis are well-known and need not be reviewed here. *See generally World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Jacobs v. Lakewood*

*Aircraft Service, Inc.,* 493 F.Supp. 46 (E.D.Pa. 1980). PMA's first argument proceeds on the faulty assumption that *its* contacts with the forum state may somehow by their sheer weight carry along the defendant. But the mere "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The bilateral activity in this case took place between the Township and the Pennsauken District Office, as distinct from the direct solicitation of a Pennsylvania corporation that occurred in *Watson McDaniel Co. v. National Pump & Control, Inc.*, 493 F.Supp. 18 (E.D.Pa. 1979). The plaintiff's unilateral activity of allocating business decisionmaking, such as the setting of premiums and the issuing of policies, to its main office does not diminish the constitutional burden on the plaintiff. Nor is the unilateral character of that activity altered by the Township Manager's knowledge of PMA's business structure. "Foreseeability" in the literal sense that the Township Manager could foresee that the policy would be issued out of PMA's Pennsylvania office, "has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *See World-Wide Volkswagen, supra*, 444 U.S. at 295, 100 S.Ct. at 566–67, 62 L.Ed.2d 490.

Plaintiff's second argument seems to be premised on an overly broad reading of my earlier opinion in *Watson McDaniel Co., supra*. Cases such as these are notoriously fact-specific, perhaps due to a conceptual disarray in the governing law. In any event, the secondary emphasis on the fictional place of formation of the contract in *Watson McDaniel* cannot support the exercise of in personam jurisdiction in a case with contacts so minimal as those here.[2] Moreover, the facts do not support PMA's contention that the contract was formed in

---

**2.** The only affirmative acts of record directed towards this jurisdiction are two letters from the Township Manager to a PMA vice-president complaining about the liberality of PMA's examining physician in permitting time off to injured workers. PMA wisely does not attempt to build this correspondence into a basis for jurisdiction.

Pennsylvania. Assuming arguendo that it was, this case well illustrates how, when contracts are made by mail, insistence on the formalities of contract or insurance law can lead away from the considerations of fundamental fairness that the Due Process Clause embodies. Reliance on the fiction of the place of making, or the place of breaching for that matter, would be excessively technical here. *See Vencedor Mfg. Co. v. Gougler Industries*, 557 F.2d 886, 890–91 (1st Cir. 1977). I conclude that the defendant has not exhibited the minimum contacts with the forum state that due process requires and accordingly will grant the motion to dismiss.