432 A.2d 974

Gerard M. KENNY and Kathleen Kenny,

v.

ALEXSON EQUIPMENT COMPANY, Thomas Lindstrom and Company, Clyde Iron Works, Incorporated, Microdot Co., Incorporated, AMCA International Corporation, American Tubular Elevator Company and International Brotherhood of Operating Engineers, Local 542, and Wm. M. Anderson Co., Inc. and Piracci Construction Co., and Dominic A. Piracci, Sr., Appellants.

Appeal of Dominic A. PIRACCI, Sr.

Edmund KOLLHOFF and Helen Kollhoff,

v.

ALEXSON EQUIPMENT COMPANY, Thomas Lindstrom and Company, Clyde Iron Works, Incorporated, Microdot Co., Incorporated, AMCA International Corporation, American Tubular Elevator Company and International Brotherhood of Operating Engineers, Local 542, and Wm. M. Anderson Co., Inc. and Piracci Construction Co., and Dominic A. Piracci, Sr., Appellants.

Appeal of Dominic A. PIRACCI, Sr.

Supreme Court of Pennsylvania.

Argued April 28, 1981.

Decided July 14, 1981.

108

110

Herman J. Obert, Jerrold P. Anders, Philadelphia, for appellants.

Henry B. Fitzpatrick, Jr., Philadelphia, for Gerard M. Kenny & Kathleen Kenny, and Edmund Kollhoff and Helen Kollhoff.

Joseph P. Green, Philadelphia, for Alexson Equip. Co.

Michael P. O'Connor, Anthony J. Damiano, Philadelphia, for Thos. Lindstrom & Co.

Elizabeth M. Iannelli, Philadelphia, for Clyde Iron Works, Microdot Co. and AMCA Int'l. Corp.

Edward J. Marcantonio, Philadelphia, for Amer. Tubular Elevator Co.

Morton F. Daller, Philadelphia, for Int'l. Brotherhood of Operating Engineers, Local 542.

Adrian R. King, Philadelphia, for Wm. M. Anderson Co.

Austin Hogan, Philadelphia, for Piracci Constr. Co.

## OPINION

NIX, Justice.

Gerard M. Kenny (Kenny) and his wife, Kathleen Kenny, instituted suit in the Court of Common Pleas of Philadelphia County as a result of injuries sustained by Kenny on Novem-

ber 8, 1973 while riding on a construction elevator powered from ground level by a hoist. The elevator dropped from a high elevation at a construction site in Philadelphia.

Edmund Kollhoff (Kollhoff) and his wife, Helen Kollhoff, also instituted suit in the Court of Common Pleas of Philadelphia County for injuries sustained by Kollhoff as a result of the same occurrence while riding on the elevator with Kenny.

Kenny and Kollhoff were a pipefitter and sheetmetal worker, respectively, in the employ of Wm. M. Anderson Company (Anderson) which was engaged in construction of the Federal Court Building in Philadelphia. Their respective complaints, which were identical except as to personal data of the individual plaintiffs, named as defendant Alexson Equipment Company (Alexson) (appellee herein). The complaints alleged that Alexson had leased the hoist elevator to their employer Anderson.

Alexson joined Piracci Construction Co., a Maryland corporation, as an additional defendant alleging it was the seller of the hoist which powered the elevator. Thereafter, Alexson petitioned the court and was granted leave to join Dominic A. Piracci, Sr., (Piracci, Sr.) (appellant herein) as an additional defendant on the grounds that Alexson had purchased the hoist from Piracci, Sr. rather than Piracci Construction Co.

On December 23, 1976, Alexson filed a praecipe pursuant to which a Writ of Summons was issued to join Piracci, Sr. as an additional defendant. The sheriff served the writ by registered mail to the Secretary of the Commonwealth in Harrisburg and to Piracci, Sr. at 2552 Woodbrook Avenue, Baltimore, Maryland, pursuant to the Long-Arm Statute then in effect.[1]

On January 24, 1977, Piracci Sr. filed a preliminary objection to the Writ of Summons on the ground that the Court

1. Act of November 15, 1972, P.L. 1063, No. 271, 42 Pa.C.S.A. § 8301 et seq. repealed, Act of July 9, 1976, P.L. 586, No. 142, § 2; as amended, Act of April 28, 1978, P.L. 202, No. 53, § 10 (60), 42 Pa.C.S.A. § 5301 et seq.

of Common Pleas of Philadelphia County was without personal jurisdiction over him. The Court of Common Pleas dismissed the preliminary objection and denied the motion to dismiss the Writ of Summons. Consolidated appeals from the orders of the Court of Common Pleas were filed in the Superior Court and heard by a panel of that court which affirmed. 428 A.2d 253. We granted allowance of appeal and now reverse.

Piracci, Sr. is an individual who is not and has never been a resident of the Commonwealth of Pennsylvania. At all times relevant to this action he was and continues to be a resident of Maryland. Piracci, Sr. does not and has never done business in Pennsylvania nor has he maintained an office or usual place of business here.

The hoist alleged by Alexson to have been defective and to have caused injuries to Kenny and Kollhoff, was sold by Piracci, Sr. to Alexson. The sale was negotiated in Maryland where delivery and payment were made. Alexson maintained an office in Baltimore, Maryland to which Piracci, Sr. invoiced the sale of the hoist. Alexson also maintained offices in Gloucester City, New Jersey and Philadelphia.

The record fails to disclose what use Alexson made of the hoist after it was purchased from Piracci, Sr. on January 21, 1972. However, almost eleven months later, it appears that the hoist was to be shipped by Alexson, from its Gloucester City, New Jersey location, where it apparently was then located, to Anderson in Philadelphia, where the accident occurred.

The facts upon which the lower courts relied as the basis for bringing Piracci, Sr. within the reach of the Long-Arm Statute was that the check with which Alexson paid Piracci, Sr. for the hoist was drawn on a Philadelphia bank and was imprinted with the address of Alexson's Philadelphia office. The lower courts reasoned that Piracci, Sr. was, thus, put on notice that the hoist would be shipped to Philadelphia. The Court of Common Pleas concluded that it had jurisdiction pursuant to 42 Pa.C.S.A. § 8309(a)(3) which stated that the

shipping of merchandise "directly or indirectly into or through this Commonwealth" shall constitute "doing business." The Superior Court, on the other hand, held that jurisdiction over Piracci, Sr. was obtained under 42 Pa.C.S.A. § 8305 which provided for jurisdiction over any non-resident individual who shall have caused any harm within this Commonwealth.

The Long-Arm Statute then in effect[2] set forth three bases for the exercise of jurisdiction over non-resident individuals. Those sections provided that any non-resident individual who commits a tortious act[3] or does business within the state[4] or causes harm within the state by way of an

2. 42 Pa.C.S.A. §§ 8301 et seq. (Supp. 1974–75).

3. 42 Pa.C.S.A. § 8303 (Supp.1974–75). Section 8303 provides:
Commission of tortious acts by individuals
Any nonresident of this Commonwealth who, acting individually, under or through a fictitious business name, or through an agent, servant or employee, shall have committed a tortious act within this Commonwealth on or after August 30, 1970, or any such individual who at the time of the commission of the tortious act within this Commonwealth was a resident of this Commonwealth who shall subsequently become a nonresident or shall conceal his whereabouts, shall be conclusively presumed to have designated the Department of State as his agent for the receipt of service of process in any civil action or proceeding instituted in the courts of this Commonwealth against such individual.

4. 42 Pa.C.S.A. §§ 8304 and 8309 (Supp.1974–75). Section 8304 provides:
Doing business by individuals
Any nonresident of this Commonwealth who, acting individually under or through a fictitious business name, or through an agent, servant or employee, shall have done any business in this Commonwealth on or after August 30, 1970, or a resident of this Commonwealth who shall have done business in this Commonwealth on or after August 30, 1970 and thereafter shall have become a nonresident of this Commonwealth or shall conceal his whereabouts, shall be conclusively presumed to have designated the Department of State as his agent for the receipt of service of process in any civil action or proceeding instituted in the courts of this Commonwealth against such individual, if and only if at the time the cause of action accrued or the harm or financial loss occurred, the nonresident or the resident who shall thereafter have become a nonresident, shall have been doing any business within this Commonwealth as heretofore provided.
Section 8309 provides in pertinent part:

action outside the state [5] will be subject to the jurisdiction of Pennsylvania.

Alexson argues that Piracci, Sr. should be amenable to jurisdiction under section 8304 which permits the exercise of jurisdiction over a non-resident individual "doing business" in Pennsylvania. Doing business is defined in section 8309. Subsection 8309(a)(3) states that "[t]he shipping of merchandise directly or indirectly into or through this Commonwealth" shall constitute doing business.

In the past, several lower federal and Pennsylvania courts have held that a non-resident defendant indirectly ships merchandise into the Commonwealth when it is reasonably foreseeable that such merchandise will find its way into this jurisdiction. *Testa v. Janssen*, 482 F.Supp. 1195 (W.D.Pa. 1980) citing *Washington v. U. S. Suzuki Motor Corp.*, 257 Pa.Super. 482, 390 A.2d 1339 (1978), *see also Kerrigan v.*

Acts affecting jurisdiction
(a) General rule.—Any of the following shall constitute "doing business" for the purposes of this chapter:
(1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.
(2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
(3) The shipping of merchandise directly or indirectly into or through this Commonwealth.
(4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.
(5) The ownership, use or possession of any real property situate within this Commonwealth.

5. 42 Pa.C.S.A. § 8305 (Supp.1974–75). Section 8305 provides:
Causing harm by individuals
Any nonresident of this Commonwealth who, acting outside of this Commonwealth, individually, under or through a fictitious business name, or through an agent, servant or employee, shall have caused any harm within this Commonwealth on or after August 30, 1970, shall be subject to service of process in any civil action or proceeding instituted in the courts of this Commonwealth arising out of or by reason of any such conduct. Service of process in any such civil action or proceeding shall be effected through the Department of State as provided in this chapter.

*Clarke Gravely Corp.*, 71 F.R.D. 480 (M.D.Pa.1975). This rule has been held applicable even if an independent middleman ships the product into the jurisdiction and is himself a nonresident. *Testa v. Janssen, supra.* Furthermore, "[a] single shipment is sufficient to subject a foreign individual or corporation to personal jurisdiction under [sub] section 8309(a)(3)." *Columbia Metal Culvert Co. v. Kaiser Industries, Inc.*, 526 F.2d 724, 728 (3d Cir. 1975). This section is a formulation of what has been referred to as the "stream of commerce" theory of jurisdiction. "The 'stream of commerce' theory asserts that a manufacturer or seller, by marketing its product in interstate commerce, has submitted voluntarily to the jurisdiction of a state to which it's product travels." *See :* Donohue, *Pennsylvania's New Long-Arm Statute,* 79 Dick.L.Rev. 51 (1974); Henegan, *Long-Arm Jurisdiction in Products Liability Actions: An "Effects Test" Analysis of World-Wide Volkswagon Corp. v. Woodson,* 45 Alb.L.Rev. 179, 189 (1980).[6]

In the present case, Piracci, Sr. sold the hoist to Alexson which was engaged in the business of leasing hoists in Maryland, New Jersey and Pennsylvania. Alexson then shipped the equipment into the Commonwealth of Pennsylvania. Alexson is essentially arguing that it was foreseeable that the hoist sold by Piracci to Alexson would be shipped by Alexson to Pennsylvania and urges us to find Piracci, Sr. amenable to jurisdiction under section 8304 and subsection 8309(a)(3).

■ Alexson has also argued, and the Superior Court agreed, that the hoist sold by Piracci, Sr. caused harm within the Commonwealth of Pennsylvania, thus bringing Piracci, Sr. within the reach of section 8305. Section 8305 ". . . requires that (1) the non-resident [shall] have acted outside of Pennsylvania, (2) his action [shall] have caused 'any harm' within Pennsylvania, and (3) the cause of action [shall] have arisen out of the conduct causing the harm." *B.J. McAdams, Inc. v. Boggs,* 426 F.Supp. 1091, 1098 (E.D.Pa.1977).

6. The stream of commerce theory is also an integral part of the "effects test" of jurisdiction, to be discussed *infra.*

This section is a formulation of what has been termed the "effects test" of extra-territorial jurisdiction. Under the "effects test," derived from the American Law Institute's Restatement (Second) of Conflict of Laws § 37 (1971):

A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable.

Unquestionably, the sale of the hoist in Maryland from Piracci, Sr. to Alexson constituted an act outside the Commonwealth. The alleged resulting harm was the personal injuries sustained by Kenny and Kollhoff in Philadelphia. In support, Alexson maintains that Piracci, Sr. failed to inspect the hoist and to maintain it in a safe and proper manner. In addition, Alexson alleges that Piracci, Sr. failed to warn of defects and/or unsafe conditions of the hoist when the sale was made. Alexson urges us to find that the facts of this case also come within the purview of section 8305.

While we may agree with appellees' initial statutory analysis of both the "stream of commerce" and "effects test" theories, the issue of whether Piracci, Sr. can be subjected to the jurisdiction of the courts of this Commonwealth does not end with a finding that his activities allegedly come within the literal language of the Long-Arm Statute.

▇▇▇ The analysis of whether a state may exercise jurisdiction over a non-resident individual must be tested against both statutory and constitutional standards. The due process clause of the Fourteenth Amendment imposes a limit on the state's exercise of jurisdiction over a non-resident defendant. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

▇▇▇ It is well settled that a state court may exercise personal jurisdiction over a non-resident defendant only so long as there exist "minimum contacts" between the defend-

ant and the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[7] The due process clause "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties or relations." *Id.* at 319, 66 S.Ct. at 159, 90 L.Ed. at 104. This requirement is based on the proposition that maintenance of suit against a non-resident defendant must not offend traditional notions of "fair play and substantial justice." *International Shoe, supra.*

In order for a state to assert jurisdiction over a non-resident defendant, the nature and quality of the defendant's activity must be such that it is reasonable and fair to require him to conduct his defense in that state. *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). "Like any standard that requires a determination of 'reasonableness,' the 'minimum contact' test of *International Shoe* is not susceptible of mechanical application; rather the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Id.* at 92, 98 S.Ct. at 1697, 56 L.Ed.2d at 141. It is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Moreover, the minimum contacts requirement serves two distinct interests. It protects a non-resident defendant from the burden of litigation in an inconvenient or distant forum and also insures that the individual states, through their courts, do not exceed the limits imposed on them by their status as co-equal sovereigns under our federal system. *World-Wide Volkswagon v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980). Explaining the notion of interstate federalism as a separate due process interest, the Court in *World-Wide Volkswagon*, stated:

7. *Cf. Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).

. . . [T]he Framers . . . intended that the States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State, in turn, implied a limitation on the sovereignty of all of its sister States—a limitation express or implicit in both the original scheme of the Constitution and the Fourteenth Amendment.

Hence, even while abandoning the shibboleth that "[t]he authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established," *Pennoyer v. Neff, supra*, 95 U.S. [714], at 720 [24 L.Ed. 565], we emphasized that the reasonableness of asserting jurisdiction over the defendant must be assessed "in the context of our federal system of government," *International Shoe Co. v. Washington, supra*, 326 U.S. [310] at 317 [66 S.Ct. 154] at 158, [90 L.Ed. 95] and stressed that the Due Process Clause ensures, not only fairness, but also the "orderly administration of the laws," id. at 319 [66 S.Ct. at 159].

444 U.S. at 293–294, 100 S.Ct. at 565, 62 L.Ed.2d at 499.
Finally in stressing the importance of interstate federalism served by minimum contacts, the Court in *World-Wide Volkswagon* stated:

. . . Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment. 444 U.S. 294, 100 S.Ct. at 565–66, 62 L.Ed.2d at 499–500.

In *World-Wide Volkswagon, supra* a products liability action was instituted in an Oklahoma state court by respondents, husband and wife. Respondents sought to recover for personal injuries sustained in Oklahoma in an accident involving an automobile that they purchased in New York while New York residents. Respondents were driving their

car through Oklahoma at the time of the accident. The defendants included the automobile retailer and its wholesaler, both New York corporations that did no business in Oklahoma. The Supreme Court held that the fortuitous circumstance that a single automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma did not constitute sufficient minimum contacts to render the New York corporations amenable to suit in an Oklahoma state court.

The Court in *World-Wide Volkswagon* also rejected the use of foreseeability as the essential factor in determining whether the exercise of jurisdiction by the forum state over a non-resident defendant satisfies Due Process.

"... [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendants conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." [Citations omitted.] 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501.

█ Thus, although foreseeability of the indirect shipment of a product into this Commonwealth or the foreseeability that an act outside the Commonwealth may cause an effect within the Commonwealth may satisfy the requirements of the Long-Arm Statute, "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." 444 U.S. at 295, 100 S.Ct. at 566, 62 L.Ed.2d at 500.

In *Jacobs v. Lakewood Aircraft Serv. Inc.*, 493 F.Supp. 46 (E.D.Pa.1980) plaintiff brought an action for wrongful death against Lakewood Aircraft (Lakewood), a New Jersey corporation engaged in the maintenance, overhaul, painting and repair of airplanes. The underlying facts as stated in the district court's opinion are as follows:

At some unspecified date, some unspecified person flew from an unspecified location an airplane to be repaired by Lakewood. Defendant, however, knew that the airplane would be returned to Pennsylvania after the repairs had

been made. On March 24, 1978, plaintiff's decedent was killed when the aircraft crashed near the North Philadelphia Airport, allegedly because the repairs were negligently done by Lakewood.

*Id.* at 48.

Lakewood was not licensed to do business in Pennsylvania. In 1977 Lakewood did place a single advertisement in both a brochure specifically for the Reading Air Show and one ad in a general aviation journal. However, there was no evidence that either publication was ever circulated in Pennsylvania. The court held that in the absence of a sustained promotional campaign on behalf of Lakewood, such ads in themselves were insufficient to constitute minimum contacts and therefore Lakewood could not be considered to have purposefully availed itself of the privilege of conducting activities within the Commonwealth, notwithstanding the fact that Lakewood knew the airplane would be returned to Pennsylvania. Id. at 50.[8]

In refusing to find minimum contacts, the district court further elaborated the constitutional limits on the "effects test" of jurisdiction contained in the Pennsylvania Long-Arm Statute[9] and in the A.L.I., Restatement (Second) of Conflict of Laws § 37.

> Neither the Restatement nor the Pennsylvania statute, however, is effective if it does not pass constitutional inspection. As *Kulko* pointed out: "Even in such situations, moreover, the Restatement recognizes that there might be circumstances that would render 'unreasonable' the assertion of jurisdiction over the nonresident defendant." 436 U.S. at 96, 98 S.Ct. at 1699.

**8.** But *see Garfield v. Homowack Lodge Inc.*, 249 Pa.Super. 392, 378 A.2d 351 (1977) (weekly advertising for a two-year period in a newspaper circulated on a city-wide basis sufficient minimum contacts); *Hart v. McCollum*, 249 Pa.Super. 267, 376 A.2d 644 (1977) (daily advertisements over a period of years in a major Philadelphia newspaper constituted sufficient minimum contacts).

**9.** 42 Pa.C.S.A. § 5322(a)(4) is a substantial reenactment of 42 Pa.C.S.A. § 8305.

I take this to mean that if the actual contacts with the forum state are both quantitatively and qualitatively below constitutional demands for fairness, the extrastate act with in-state consequences will not alone sustain jurisdiction. This I think is the case here.

*Id.* at 50.[10]

In *De James v. Magnificence Carriers, Inc.,* 491 F.Supp. 1276 (D.N.J.1980) plaintiff brought suit under federal admiralty jurisdiction to recover for personal injuries suffered while working aboard the vessel M. V. Magnificence Venture. The injuries occurred while the vessel was moored at a pier in Camden, New Jersey.

Hitachi Shipbuilding and Engineering Company Ltd. (Hitachi) entered into a contract in Japan with defendants Magnificence Carriers, Inc., Ventures Shipping and Nippon Yusen Kaisha, the charterers of the vessel, M. V. Magnificence Venture, whereby Hitachi agreed to convert the vessel into an automobile carrier. Plaintiff alleged that the conversion work performed by Hitachi was defective and the direct cause of his injuries.

Hitachi completed all work on the vessel at issue in its Japanese shipyard and had no further contact or involvement with the ship once it left Japan. Moreover, Hitachi did not maintain an office in New Jersey, nor did it have an agent of any type there or transact any business in the state.

At issue in *De James* was whether the presence of a ship in New Jersey upon which the defendant, Hitachi, had performed conversion work in Japan and the occurrence of an injury caused by that work, were sufficient bases upon which to subject Hitachi to suit in New Jersey pursuant to its Long-Arm Statute. Plaintiff argued in support of the exercise of jurisdiction over Hitachi "that a company which delivers ships into the stream of commerce should reasonably anticipate that its 'product' will touch ports throughout the world and concomitantly, should expect to be haled into

**10.** *See generally: Red River Transport v. Custom Automotive Inc.,* 497 F.Supp. 425 (D.N.D.1980); *Pa. Mfrs. Ass'n Ins. Co. v. Twp. of Gloucester,* 493 F.Supp. 1047 (E.D.Pa.1980).

court in any forum where a defect in one of its ships causes harm." *Id.* at 1279.

In rejecting plaintiff's reliance on *Benn v. Linden Crane Co.*, 326 F.Supp. 995 (E.D.Pa.1971) and distinguishing other "stream of commerce" cases [11] the court stated:

A close analysis of the "stream of commerce" decisions reveals that the manufacturers or distributors involved in those cases had all made a deliberate decision to market their products in the forum state either directly or indirectly by utilizing an interstate distribution network. While most of the parties involved did not themselves deal with anyone in the forum state, the courts took the position that the companies had placed their products into the forum by virtue of their knowing use of a distributive scheme. In the instant case, by contrast, there was no distributive or marketing scheme whereby Hitachi sought to have the vessel in question marketed and sold through channels to a New Jersey resident. Hitachi's sole involvement with the vessel was under a contract made in Japan between itself and the ship's owners under which Hitachi performed certain conversion work on the ship. It had no control over the ship once it left Japan. It made no decision to send the ship into New Jersey, nor did it seek to benefit from the laws of New Jersey or derive any profit there, either directly or indirectly.

*Id.* at 1280.

The court in *De James* held that Hitachi did not have sufficient minimum contacts with New Jersey in order to render it amenable to jurisdiction pursuant to its Long-Arm Statute.[12]

---

**11.** *Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir. 1980); *Blum v. Kawaguchi, Ltd.*, 331 F.Supp. 216 (D.Neb.1971); *Smiley v. Gemini Investment Corp.*, 333 F.Supp. 1047 (W.D.Pa.1971); *Gill v. Fairchild Hiller Corp.*, 312 F.Supp. 916 (D.N.H.1970); *Certisimo v. Heidelberg Co.*, 122 N.J.Super. 1, 298 A.2d 298 (Law Div.1972), aff'd, 124 N.J.Super. 251, 306 A.2d 79 (App.Div.1973).

**12.** *See also Heckel v. Beech Aircraft Corp.*, 467 F.Supp. 278 (W.D.Pa. 1979) (airplane crash held insufficient as sole basis for jurisdiction over the nonresident aircraft repair shop); *Miller v. Cousins Proper-*

In *Kerrigan v. Clarke Gravely Corp., supra,* plaintiffs, husband and wife, both Pennsylvania residents, sought to institute suit for personal injuries against a New Jersey partnership (Kenvil) which had repaired a tractor belonging to them. Plaintiffs had taken the tractor to Kenvil in New Jersey and picked it up there once the repairs were performed. Plaintiffs alleged that the wife's injuries resulted from the negligent repair of the tractor.

Kenvil had no store, representative, agent or distributor in Pennsylvania. It did not advertise nor did any business in Pennsylvania. All of its sales were made in New Jersey. Plaintiffs sought to have the federal diversity court assert jurisdiction over Kenvil under section 8305 of the Pennsylvania Long-Arm Statute. In rejecting the significance of plaintiffs' argument that it was foreseeable that the tractor would be returned to Pennsylvania and in denying jurisdiction because it violated due process the district court stated:

> . . . [T]his argument overlooks the Supreme Court's caveat that there are "territorial limitations on the power of the respective States." *Hanson v. Denckla, supra,* 375 U.S. at 251, 78 S.Ct. at 1238. Taken to its logical conclusion, it would subject any non-resident business, which by its nature has interstate ramifications, to the *in personam* jurisdiction of any state where the business's product comes to rest and causes injury. *Cf. Erlanger Mills v. Cohoes Fibre Mills,* 239 F.2d 502, 507 (4th Cir. 1956), *Uppgren v. Executive Aviation Services, Inc.,* 304 F.Supp. 165, 170 (D.Minn.1969); *Jack O'Donnell Chevrolet, Inc. v. Shankles,* 276 F.Supp. 998 (M.D.Ill.1967). Such a per se rule can produce consequences which offend " 'traditional notions of fair play and substantial justice.' " *Interna-*

*ties Inc.,* 378 F.Supp. 711 (D.Vt.1974) (airplane accident insufficient contact with state to warrant jurisdiction over out-of-state corporation); *Knapp v. Franklin Coach Co.,* 365 F.Supp. 305 (W.D.Pa.1973) (automobile accident in Pennsylvania held insufficient contact with State to subject Ohio repair shop to jurisdiction there); *Uppgren v. Executive Aviation Services, Inc.,* 304 F.Supp. 165 (D.Minn.1969) (presence of allegedly defective helicopter in Minnesota causing injury to plaintiff within the state does not warrant exercise of jurisdiction over Maryland retail dealer in Minnesota).

*tional Shoe Co. v. Washington, supra,* 326 U.S. at 316, 66 S.Ct. at 158.

71 F.R.D. at 486.

Finally, appellee asserts that the acceptance of a check drawn on a Philadelphia bank, in payment for the hoist, was sufficient to constitute the requisite minimum contacts necessary to satisfy due process.

In the instant case, the sale of the hoist from Piracci, Sr. to Alexson was negotiated and consummated in the state of Maryland. Piracci, Sr. invoiced the hoist to Alexson's Maryland office. Certainly the acceptance of a check, which was merely ancillary to the sale that occurred exclusively in Maryland cannot be said to constitute purposeful activity within Pennsylvania. To accept the reasoning that acceptance of a check drawn on an out-of-state bank is sufficient to constitute minimum contacts with that state is patently absurd. Amenity to suit could be established in any jurisdiction merely on the basis of where the maker of a check decided to maintain a checking account. As the Court stated in *Hanson v. Denckla, supra:*

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State . . . [Emphasis added.] 357 U.S. at 253, 78 S.Ct. at 1239–1240, 2 L.Ed.2d at 1298.

Moreover, the act of cashing the check was wholly unrelated to the cause of action for personal injuries which arose in Pennsylvania. In order for jurisdiction to attach in this situation, the nonresidents' activities in the forum state must be "so continuous and substantial as to make it reasonable for the Commonwealth to exercise jurisdiction over [an] admittedly unrelated cause of action." *Bork v. Mills,* 458

Pa. 228, 232, 329 A.2d 247, 249 (1974). Piracci, Sr. did not conduct any continuous business activity within the Commonwealth of Pennsylvania. He cannot be said to have purposefully availed himself of the privilege of conducting activities within the Commonwealth nor purposefully availed himself of the benefits of the protection of the laws of Pennsylvania. *Hanson v. Denckla, supra.* To hold Piracci, Sr. amenable to suit in Pennsylvania on the basis of the receipt of a check drawn on a Philadelphia bank or upon the fortuitous circumstance that the hoist, some eleven months later, found its way into Pennsylvania, would have the effect of appointing the hoist his agent for service of process. His amenability to suit would travel with the hoist. *World-Wide Volkswagon, supra.*

■ We therefore hold that when an individual seller, not doing business within the Commonwealth, transacts an isolated sale outside the Commonwealth to an unrelated buyer, the causing of a harmful effect in itself, within the Commonwealth or the mere entry of that single product into the stream of commerce within the Commonwealth, in the absence of purposeful participation by the seller in a continuous distributive chain of such product is insufficient to satisfy the minimum contacts requirement of due process and such seller cannot be found amenable to *in personam* jurisdiction pursuant to Pennsylvania's Long-Arm Statute. On these facts, Piracci, Sr. cannot be said to have reasonably anticipated being haled into court in Pennsylvania nor be found to have maintained sufficient minimum contacts with this jurisdiction.[13]

Accordingly, the Orders of the Superior Court are reversed and the Writ of Summons against Piracci, Sr. is dismissed.

ROBERTS, J., filed a concurring opinion.

13. We have reviewed the additional statutory jurisdictional arguments raised by appellee and find them to be totally without merit.

LARSEN and KAUFFMAN, JJ., concurred in the result.

O'BRIEN, C. J., did not participate in the consideration or decision in this case.

ROBERTS, Justice, concurring.

I agree that the preliminary objection of appellant, Dominic A. Piracci, Sr. (defendant), challenging the jurisdiction of the trial court, should have been sustained. Constitutional due process permits a court to exercise jurisdiction to decide a claim against a non-resident only where there exist "minimum contacts" among the defendant, the forum and the litigation such that it would be "fair play and substantial justice" to require the non-resident to defend in the forum. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). See *Sperry & Hutchinson Co. v. O'Connor*, 488 Pa. 340, 412 A.2d 539 (1980) (dissenting opinion of Roberts, J.).

On this record, although there is a relationship between the cause of action and the forum (alleged negligence resulted in injuries in Pennsylvania), no nexus has been alleged between the defendant and Pennsylvania. Thus, the trial court erred in asserting jurisdiction over appellant. Neither the foreseeability nor convenience of defending a lawsuit may substitute for the constitutional due process requirement of "minimum contacts" between a defendant and the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).