**Winifred M. JACOBS, Executrix of the Estate of Gerald Jon Jacobs, Deceased**

v.

**LAKEWOOD AIRCRAFT SERVICE, INC., and Beryl D'Shannon Aviation Specialties, Inc., and Flight Extenders, Inc.**

**Civ. A. No. 79–1044.**

United States District Court, E. D. Pennsylvania.

April 22, 1980.

David S. Shrager, Philadelphia, Pa., for plaintiff.

Michael D. Gallagher, of LaBrum & Doak, Philadelphia, Pa., for Flight Extenders, Inc.

J. Bruce McKissock, Philadelphia, Pa., for Lakewood.

Carole Wooldrik, St. Paul Minn., and Sidney L. Wickenhaver, Philadelphia, Pa., for Beryl D'Shannon Aviation.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This case is another of that burgeoning number that are proliferating like judicial rabbits, in which service under a state "long-arm" statute is attacked. Service here was effected on the defendant New Jersey corporation under the Pennsylvania statute, 42 Pa.C.S.A. § 5322. Defendant has moved to dismiss under Fed.R.Civ.P. 12(b)(2) alleging lack of personal jurisdiction. I will grant the motion.

While the immediate instrument for the assertion of *in personam* jurisdiction is the statute just mentioned, the ultimate test of validity is whether the defendant's presence in the forum state is consistent with Due Process protection. I therefore go immediately to the constitutional question. *Inpaco, Inc. v. McDonald's Corp.*, 413 F.Supp. 415 (E.D.Pa.1976); *Watson McDaniel Co. v. National Pump and Control, Inc.*, 493 F.Supp. 18 (E.D.Pa.1979).

In *Shaffer v. Heitner,* 433 U.S. 186, 212, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683 (1977), it was held that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." These standards were explicated in *Rush v. Savchuk,* 444 U.S. 320, 327, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980):

> That is, a State may exercise jurisdiction over an absent defendant only if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945). In determining whether a particular exercise of state-court jurisdiction is consistent with due process, the inquiry must focus on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner, supra,* 433 U.S. at 204 [97 S.Ct. at 2580].

The composition of the concepts of "fairness" or "reasonableness" has remained somewhat amorphous, but a few defined specifics have emerged.

In *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958), the Court said:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

In addition to the general rubric of fairness, which looks to the defendant's interest, we are instructed that we must also look to the interest of the forum state in adjudicating a dispute within its borders. *Empire Abrasive Equipment Corp. v. H. H. Watson, Inc.,* 567 F.2d 554, 557 (3d Cir. 1977). However, this "forum interest" must be counterbalanced against two competing interests. First, if the "minimum contacts" do not satisfy the constitutional concept of fundamental fairness, the forum interest must give way. "Thus a state may exercise its jurisdiction in a manner consistent with values of federalism, but if that exercise would nevertheless be fundamentally unfair to the defendant, the power is void." *Id.* Second, the defendant's own state also has an interest in protecting its citizens from distant, possibly harassing litigation, especially where the alleged dereliction took place, as here, within its own borders. The rule "acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Later on in the *World-Wide Volkswagen* opinion, at 293–294, 100 S.Ct. at 565, Mr. Justice White expanded on the importance of the notions of state sovereignty:

> But the Framers also intended that the States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State, in turn, implied a limitation on the sovereignty of all of its sister States—a limitation express or implicit in both the original scheme of the Constitution and the Fourteenth Amendment.
>
> Hence, even while abandoning the shibboleth that "[t]he authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established," *Pennoyer v. Neff, supra,* 95 U.S. [714], at 720 [24 L.Ed. 565], we emphasized that the reasonableness of asserting jurisdiction over the defendant must be assessed "in the context of our federal system of government," *International Shoe Co. v. Washington, supra,* 326 U.S. [310] at 317 [66 S.Ct. 154 at 158, 90 L.Ed. 95] and stressed that the Due Process Clause ensures, not only fairness, but also the "orderly administration of the laws," *id.* at 319 [66 S.Ct. at 159].

With these concepts in mind, I turn to the facts before me. Lakewood Aircraft is a New Jersey corporation, engaged in the maintenance, overhaul, painting and repair of airplanes. In addition to the owner, it employs three men. Approximately 50% of its business is from out of New Jersey, of which approximately 5%, or 2.5% of its total business comes from states other than New York. In 1977, Lakewood advertised in Flight Line Times specifically for distribution at the Reading Air Show in Reading, Pennsylvania. In November, 1978, it advertised in North Atlantic Aviation, a major trade journal for general aviation. There is no showing that North Atlantic Aviation was ever circulated in Pennsylvania. Lakewood is not licensed to do business in Pennsylvania.

At some unspecified date, some unspecified person flew from an unspecified location an airplane to be repaired by Lakewood. Defendant, however, knew that the airplane would be returned to Pennsylvania after the repairs had been made.[1] On March 24, 1978, plaintiff's decedent was killed when the aircraft crashed near the North Philadelphia Airport, allegedly because the repairs were negligently done by Lakewood.

It is true that "the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff*, 95 U.S. 714 [24 L.Ed. 565], to the flexible standard of *International Shoe Co. v. Washington*, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95]. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." *Hanson v. Denckla, supra*, 357 U.S. at 251, 78 S.Ct. at 1238, 2 L.Ed.2d 1283. In *World-Wide Volkswagen Corp. v. Woodson, supra*, at 292, 100 S.Ct. at 564, the Court said: "The relationship between the defendant and the forum must be such that it is 'reasonable . . . to require the corporation to defend the particular suit which is brought there.' 326 U.S., at 317 [66 S.Ct., at 158]. [*quoting International Shoe* ]".

I conclude here that the contacts of Lakewood with a Pennsylvania forum fall below that minimum which is required for constitutional fairness. Defendant is not a large corporation which intentionally places its product in interstate commerce with the purpose, or at least the expectation that it will be purchased in whatever state it may find itself. In *World-Wide Volkswagen, supra*, at 297–298, 100 S.Ct. at 567, the Court said: "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Here, however, the transportation of the airplane to Pennsylvania was, so far as defendant is concerned, completely fortuitous. It made no difference to defendant whether it went to Maryland or Connecticut or even remained in New Jersey. Defendant's connection with the aircraft was entirely in New Jersey. Unlike the corporations in cases such as *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), defendant did not intentionally or purposefully inject the airplane over state lines. That was done by someone totally unconnected with defendant and it served the defendant not at all. It was simply the unilateral activity of plaintiff's decedent or his representative and was not an "act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla, supra*, 357 U.S. at 253, 78 S.Ct. at 1240. *Cf. Empire Abrasive Equipment Corp. v. H. H. Watson, Inc., supra*, at 558.

In *Rosenthal & Co. v. Dodick*, 365 F.Supp. 847, 850 (N.D.Ill. 1973), the court said:

The unilateral action of plaintiff in sending confirmations and statements of account to defendant from its Chicago office rather than its New York office

---

1. This was agreed to at oral argument.

cannot satisfy the requirement of minimum contact with Illinois because *it is the acts of the defendant which are relevant. Hanson v. Denckla, supra* ; *Fisons Limited v. United States*, 458 F.2d 1241 (7th Cir. 1972).

(Emphasis added.)

It is true that some courts have thought that *Hanson's* requirement of purposefully availing "should not be read too literally", *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 496 (5th Cir. 1974). *See also Great Western United Corp. v. Kidwell*, 577 F.2d 1256, 1268 (5th Cir. 1978), *rev'd on other grounds, sub.nom. Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). However, the *Product Promotions* court, *supra*, at 496, also pointed out:

> Instead, the requirement reflects the Court's conclusion that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298. *The operative consideration is that the defendant's contacts with the forum were deliberate, rather than fortuitous*, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise.

(Emphasis added.)

And in *Turner v. Baxley*, 354 F.Supp. 963, 976 (D.Vt. 1972), the court said: "The defendant must have taken voluntary action calculated to have an effect in the forum state". Here, defendant took no voluntary action calculated to have an effect in Pennsylvania. That was done by someone else and, as to defendant, the Pennsylvania presence was purely fortuitous.

Nor is it significant that the airplane was mobile and that Pennsylvania was its foreseeable destination. In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), a husband and wife purchased an Audi automobile from the petitioner in New York. A year later, they moved to Arizona and as they passed through Oklahoma en route, they were involved in an accident in which the Audi caught fire. They brought suit in Oklahoma against petitioner, alleging defective design. ·Oklahoma upheld *in personam* jurisdiction. Respondent argued that because an automobile is highly mobile both in design and purpose, it was "foreseeable" that the Audi would cause injury in Oklahoma and therefore that service was proper. The Court rejected this argument. Mr. Justice White said:

> It is argued, however, that because an automobile is mobile by its very design and purpose it was "foreseeable" that the Robinsons' Audi would cause injury in Oklahoma. Yet "foreseeability" alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.

> .    .    .    .    .

> This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*Id.* at 295–297, 100 S.Ct. at 566–567.

The minimum contacts-fairness test has been held satisfied when the foreign defendant actively seeks to attract residents of the forum to use defendant's own facilities in its own state. Thus, in *Hart v. McCollum*, 249 Pa.Super. 267, 376 A.2d 644 (1977), the defendants, New Jersey corporations through 1973, 1974 and beyond, advertised on a continual, almost daily basis in the Philadelphia Daily News and other publications within the Commonwealth of Pennsylvania to induce Commonwealth residents to patronize their establishment, the Earlton Bowl Lounge on Kings Highway in Cherry Hill, New Jersey. In sustaining long-arm jurisdiction, the court said:

> Defendants certainly "availed [themselves] of the privilege of acting within"

Pennsylvania. They contracted with one of Philadelphia's major newspapers for the specific purpose of making citizens of this Commonwealth aware of their facilities. Their actions invoked "the benefits and protections" of our laws. *Id.* at 647–48.

In *Garfield v. Homowack Lodge, Inc.*, 249 Pa.Super. 392, 378 A.2d 351 (1977) defendant, located in New York, for each week during approximately two years advertised at an annual cost of $2,000 per year its resort in the Jewish Exponent, a newspaper published and distributed in the Philadelphia area. It also provided advertising brochures to Philadelphia travel agents and maintained a toll-free number for Philadelphians to make reservations. The court upheld jurisdiction "in light of the intensive solicitation for profit appellant carries on in this Commonwealth." *Id.* at 355.

Defendant's advertising activities in Pennsylvania do not approach those in *Hart* or *Garfield.* In fact, they are almost nonexistent. One ad appeared in North Atlantic Aviation in November, 1978, several months after the accident. This single ad, not a part of any sustained advertising campaign,[2] not shown to have been circulated in Pennsylvania and coming eight months after the accident,[3] is irrelevant because it plainly did not give rise to the cause of action asserted here. *See* 42 Pa.C.S.A. § 5322(c). The only other ad was in Flight Line Times in 1977. There is, therefore, only a single relevant advertisement in Pennsylvania over whatever (unknown) period of years defendant has been in business. By this single act, the defendant did not purposefully avail itself of the privilege of acting within this Commonwealth to the extent that the exercise of jurisdiction would meet constitutional standards of fairness. *Cf. Empire Abrasive Equipment Corp. v. H. H. Watson, Inc., supra.*

Plaintiff points out that about 50% of defendant's business is from out-of-state, about 95% of which is from New York. Of the remaining 2.5% of the total business, I am left to guess how much came from Pennsylvania and how much came from the other states. The burden is on plaintiff to support jurisdiction and it cannot be done by guesswork.

Neither the miniscule advertising nor the unknown amount of Pennsylvania business is "sufficient connection between the defendant and the forum State as to make it fair to require defense of the action in the forum." *Kulko v. California Superior Court,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978).

The Pennsylvania long-arm statute permits jurisdiction for "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 Pa.C.S.A. § 5322(a)(4). This same jurisdictional principle is expressed in A.L.I., Restatement (Second) of Conflict of Laws § 37. Neither the Restatement nor the Pennsylvania statute, however, is effective if it does not pass constitutional inspection. As *Kulko* pointed out: "Even in such situations, moreover, the Restatement recognizes that there might be circumstances that would render "unreasonable" the assertion of jurisdiction over the nonresident defendant." 436 U.S. at 96, 98 S.Ct. at 1699.

I take this to mean that if the actual contacts with the forum state are both quantitatively and qualitatively below constitutional demands for fairness, the extra-state act with in-state consequences will not alone sustain jurisdiction. This I think is the case here.

Decisions in these long-arm cases are not easy, and there is a reason for the difficulty. In *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 445 U.S. 907, 911, 100 S.Ct. 1087, 1089, 63 L.Ed.2d 325 (1980) (mem.) Mr. Justice White, dissenting from denial of certiorari, pointed out the "disarray" in the decisions, both state and federal. He said: "The disarray

---

**2.** *Cf. Garfield v. Homowack Lodge, supra* (intensive, sustained advertising).

**3.** *Cf. Hart v. McCollum, supra* (specific allegation that plaintiff was attracted to New Jersey by the ads).

among federal and state courts noted above may well have a disruptive effect on commercial relations in which certainty of result is a prime objective. That disarray also strongly suggests that prior decisions of this Court offer no clear guidance on the question."

I agree.