Christina McCABE

v.

**KEVIN JENKINS AND ASSOCIATES, INC. and Donald L. Herron.**

**Civ. A. No. 81–1660.**

United States District Court, E. D. Pennsylvania.

Feb. 3, 1982.

Susan I. Schulman, Spencer M. Wertheimer, Philadelphia, Pa., for plaintiff.

M. Duncan Grant, Nina M. Gussack, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Defendant Kevin Jenkins and Associates, Inc. (KJAI) has moved for summary judgment in this libel action claiming that this court lacks personal jurisdiction over it. Service in this case was made on defendant KJAI pursuant to Pennsylvania's long-arm statute. 42 Pa.Cons.Stat.Ann. §§ 5321–5329 (Purdon 1981). Following my examination of the factual and legal presentations of the parties, both in the papers and at oral argument, I find that KJAI has insufficient contacts with this forum and therefore grant its motion for summary judgment.

### I. *Statement of the Law*

■ Under the Federal Rules of Civil Procedure, the territorial reach of a federal district court's jurisdiction is defined and limited by the applicable jurisdictional statutes of the state in which the district court sits. Fed.R.Civ.P. 4(e). Because the Pennsylvania statute extends jurisdiction to the fullest extent permitted under the Constitution,[1] however, the only inquiry required is

---

1. The Pennsylvania statute reads in pertinent part:

(b) *Exercise of full constitutional power over non-residents.* In addition to the provisions

whether assertion of jurisdiction over KJAI is consistent with the due process standards set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. I therefore proceed immediately to the constitutional question. *See Jacobs v. Lakewood Aircraft Service, Inc.*, 493 F.Supp. 46 (E.D.Pa.1980); *Watson McDaniel Co. v. National Pump & Control, Inc.*, 493 F.Supp. 18 (E.D.Pa.1979).

In *International Shoe*, the Supreme Court held that jurisdiction over a defendant is consistent with the due process clause of the Constitution only in a case in which the defendant has certain minimum contacts with the forum state such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " 326 U.S. at 316, 66 S.Ct. at 158. This is not a mechanical or quantitative test: "[w]hether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Id.* at 319, 66 S.Ct. at 159. Finally, "[i]n determining whether a particular exercise of . . . jurisdiction is consistent with due process, the inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.' *Shaffer v. Heitner, supra*, 433 U.S. [186] at 204 [97 S.Ct. 2569 at 2580, 53 L.Ed.2d 683]." *Rush v. Savchuk*, 444 U.S. 320, 327, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980).

■ There have been a number of refinements on the basic principles espoused by the Supreme Court in *International Shoe*. For example, in evaluating the sufficiency of a defendant's contacts with the forum, I must determine whether the defendant has "purposefully availed itself" of the privileges of conducting activities within that particular forum, thereby invoking the benefits and protections of its laws:

The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). This principle was recently reiterated as a necessary predicate to jurisdiction in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), in which the Supreme Court held that because "the defendants' conduct in connection with the forum State" was not such that they would "reasonably anticipate being haled into court" in Oklahoma, that state's courts could not assert jurisdiction over them. *Id.* at 297, 100 S.Ct. at 567.

■ Second, constitutionally permissible jurisdiction cannot be asserted over a defendant merely because it has acquiesced in activity within the forum state initiated by another party without soliciting that business. In such a case, the defendant will not be deemed to have purposefully availed itself of the forum state's laws, even though it has engaged in some minimal deliberate activity within the forum state. *See, e.g., A. M. Communications Corp. v. Eastern Connecticut Cable Vision*, No. 79–95 (E.D. Pa., Apr. 9, 1980); *Jacobs v. Lakewood Aircraft Service, Inc.*, 493 F.Supp. 46 (E.D.Pa. 1980); *Bean v. Winding River Camp Ground*, 444 F.Supp. 141 (E.D.Pa.1978).

■ Third, following a complete evaluation of the above considerations, which look to the defendant's interests, courts have also examined the interest of the forum state in adjudicating a dispute within its borders. *See Empire Abrasive Equipment Corp. v. H. H. Watson, Inc.*, 567 F.2d 554,

of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.
42 Pa.Cons.Stat.Ann. § 5322(b) (Purdon 1981).

557 (3d Cir. 1977). In turn, this interest of the forum must be balanced against two competing interests:

> First, if the "minimum contacts" do not satisfy the constitutional concept of fundamental fairness, the forum interest must give way. "Thus a state may exercise its jurisdiction in a manner consistent with values of federalism, but if that exercise would nevertheless be fundamentally unfair to the defendant, the power is void." [*Empire Abrasive Equipment Corp.*, 567 F.2d at 557.] Second, the defendant's own state also has an interest in protecting its citizens from distant, possibly harassing litigation, especially where the alleged dereliction took place, as here, within its own borders. The rule "acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." [*World-Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. at 564.]

*Jacobs*, 493 F.Supp. at 47.

## II. *Statement of the Facts*

 Having established the relevant principles of law, I turn now to the facts in this case.[2] Plaintiff, a Pennsylvania citizen, filed this diversity action alleging invasion of privacy and defamation against defendants KJAI, a California corporation with its principal place of business in California, and Donald Herron, a private individual who is a citizen of the State of New York. Plaintiff's cause of action arises from the allegedly unauthorized publication of plaintiff's photograph with an accompanying caption in "Boulevards" magazine, which is owned, published, and distributed by defendant KJAI.

An affidavit submitted by Kevin Jenkins, president of KJAI, discloses the following uncontroverted facts. The allegedly defamatory photograph of plaintiff was taken in San Francisco by defendant Herron, a professional photographer. (Jenkins Affidavit ¶ 27) "Boulevards" is published in San Francisco, California and presently has a monthly circulation of approximately 5,000. (Jenkins Affidavit ¶¶ 2, 24) Ninety-five percent of the advertising carried in "Boulevards" is from San Francisco and/or California sources. (Jenkins Affidavit ¶ 14) KJAI has a total of three full-time employees (Jenkins Affidavit ¶ 29), and has had net operating losses in excess of a total of $25,000 over the last three years. (Jenkins Affidavit ¶ 26)

KJAI has no offices or agents in the Commonwealth of Pennsylvania, is not registered to do business in the Commonwealth, and does not maintain a place of business within the Commonwealth. (Jenkins Affidavit ¶ 5) KJAI has never appointed any agent for service of process in the Commonwealth of Pennsylvania. (Jenkins Affidavit ¶ 6) KJAI has never had any employees, reporters, correspondents, or photographers in the Commonwealth of Pennsylvania. (Jenkins Affidavit ¶ 7) KJAI has never had or maintained any bank accounts in Pennsylvania, nor does it own any assets, real property, or personal property within the Commonwealth. (Jenkins Affidavit ¶ 8) KJAI has never advertised "Boulevards" magazine in newspapers, magazines, or other sources published or

---

**2.** Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Both parties have filed affidavits pursuant to Rule 56(e).

It is well settled that the moving party, in this case defendant, has the burden of demonstrating the absence of a genuine issue as to any material fact. *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.*, 190 F.2d 817, 824 (3d Cir. 1951). Further, in considering defendant's motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

Notwithstanding the above, plaintiff has the burden of pleading and proving facts establishing this court's jurisdiction over defendant KJAI. *See Hicks v. Kawasaki Heavy Industries*, 452 F.Supp. 130, 133 (M.D.Pa.1978); *Kenyatta v. Kelley*, 430 F.Supp. 1328, 1330 (E.D.Pa. 1977).

distributed in Pennsylvania and does not employ any advertising or sales people in Pennsylvania. (Jenkins Affidavit ¶ 11)

Aside from routinely placed subscription cards in every issue of "Boulevards" magazine,[3] KJAI has never solicited any business in Pennsylvania, either directly or indirectly, through agents, sales people, sales representatives, or other representatives. (Jenkins Affidavit ¶¶ 12, 21) "Boulevards" magazine does not carry any advertising from Pennsylvania businesses and KJAI therefore does not derive any advertising revenues from Pennsylvania. (Jenkins Affidavit ¶ 13) KJAI has never been listed in a directory or had telephone service in the Commonwealth of Pennsylvania. (Jenkins Affidavit ¶ 15) Finally, KJAI has never executed any contracts within the Commonwealth of Pennsylvania. (Jenkins Affidavit ¶ 16)

■ There is some dispute concerning the precise number of Pennsylvania subscribers to "Boulevards," as well as the nature of those subscribers. According to KJAI, as of December 1980, six Pennsylvania residents[4] had subscriptions to "Boulevards" magazine, all of which were unsolicited by KJAI.[5] (Jenkins Affidavit ¶ 17) An affidavit submitted by plaintiff establishes that a Mr. Steven Bokas has received three copies of "Boulevards" magazine each month under a subscription agreement between Newsy, his newspaper and magazine store, and KJAI. (Bokas Affidavit ¶ 5) Whether these three subscriptions are included within the six subscriptions referred to in the Jenkins affidavit is unclear from this record.[6]

Further, according to the Jenkins affidavit, KJAI has never licensed or authorized any distributor, news stand, or other person in Pennsylvania to distribute "Boulevards" magazine. Mr. Jenkins concludes that "[i]f Boulevards is sold on any news stand in Pennsylvania, such resale, therefore, is not authorized by KJAI." (Jenkins Affidavit ¶ 10) The Bokas affidavit, however, represents that at least one news stand in Pennsylvania does indeed resell copies of "Boulevards" magazine to the public. (Bokas Affidavit ¶ 4) It is uncontroverted on this record, however, that KJAI has not authorized Mr. Bokas or any other individual to resell or distribute copies of "Boulevards" magazine to the public.

3. Out of an apparent abundant sense of caution, plaintiff requested me following oral argument to consider a supplemental affidavit to the effect that KJAI places subscription cards in each issue of "Boulevards" magazine. Because I consider the facts sworn to in plaintiff's supplemental affidavit to already be of record, I need not rule on that request.

4. Since December 1980, an additional seven Pennsylvania residents have begun subscribing to "Boulevards" magazine, including Susan Schulman, Esq., counsel for plaintiff in this action. (Jenkins Affidavit ¶¶ 18, 19) These additional subscriptions obtained by Pennsylvania residents following the alleged defamation are irrelevant to the due process analysis, as the cause of action, in no sense, can be deemed to have arisen from these contacts. See Jacobs, 493 F.Supp. at 50 (advertisement of defendant, circulated in Pennsylvania eight months after airplane crash allegedly caused by defendant's negligent repairs "is irrelevant because it plainly did not give rise to the cause of action asserted here.")

5. The Jenkins affidavit states expressly that all of the Pennsylvania subscriptions were unsolicited. Plaintiff's counsel attempted to dispute this factual averment at oral argument. Her covering letter sending plaintiff's supplemental affidavit to me implies that its purpose was to rebut Mr. Jenkins's factual averment that the "Boulevards" subscriptions were unsolicited. If this was her intent, the affidavit is insufficient in that regard. That each copy of "Boulevards" contains subscription cards is hardly dispositive, or even suggestive, of the issue whether the subscriptions themselves are solicited.

6. Defendant KJAI also felt compelled to submit a supplemental affidavit to aid me in my decision. Defendant's supplemental affidavit, by Mr. Jenkins, states flatly that neither Mr. Bokas nor Mr. Newsy was a subscriber to the December 1980 issue of "Boulevards." Under the applicable standards for considering a motion for summary judgment, however, I must view all factual inferences in the light most favorable to plaintiff. See note 2 supra. Thus, Mr. Bokas's statement of December 4, 1981 that he had been a subscriber to "Boulevards" for at least a year must, in the sense noted above, "prevail" over the statements in defendant's supplemental affidavit.

### III. *Holding*

As is usual in most *in personam jurisdiction* challenges, applying the relevant principles of law to the facts of this case presents an extremely close and difficult question of law. Both plaintiff and defendant can stake equally impressive claims to prevailing based on the precedents reviewed in part I of this opinion.

On plaintiff's side of the ledger, three considerations are particularly persuasive. First, defendant voluntarily ships at least six, and possibly as many as nine, copies of "Boulevards" magazine into the forum jurisdiction on a monthly basis. Each issue contains a standard subscription card. Under the applicable case law, even in a case in which a systematic course of conduct does not exist, *in personam* jurisdiction has been upheld where even a single shipment of goods is made into the forum. *See Columbia Metal Culvert Co. v. Kaiser Industries Corp.*, 526 F.2d 724 (3d Cir. 1975); *Garis v. Mouldings, Inc.*, 53 Pa.D. & C.2d 53 (Northampton County Ct. of C.P.1971).

Second, even though "Boulevards" magazine is published outside of the forum state, it is at least arguable that it was reasonably foreseeable to the magazine's publishers that it could cause harm within Pennsylvania and that KJAI could therefore be "haled" into court in that state. KJAI cannot claim that it was unaware of its publication's presence in Pennsylvania—its voluntary, and presumably purposeful, mailing of subscriptions into Pennsylvania each month should have put it on notice of the potential harms that defamatory material contained within each issue could cause in Pennsylvania. *See Testa v. Janssen*, 482 F.Supp. 1195 (W.D.Pa.1980); *Kieser v. Lit Brothers*, 275 Pa.Super.Ct. 508, 419 A.2d 16 (1980).

▮ Finally, Pennsylvania has an extremely strong interest in protecting its residents from the harms occasioned through the tort of defamation. In *Rusack v. Harsha*, 470 F.Supp. 285 (M.D.Pa.1978), a Washington, D. C. employer sent an allegedly defamatory letter about plaintiff to the Secretary of Defense in Washington, with a copy sent to plaintiff's employment division within the Commonwealth of Pennsylvania. The court upheld *in personam* jurisdiction by finding that, although the defendant's only contact with the Commonwealth was his act of sending one copy of the letter into Pennsylvania, it was "foreseeable that if one defames another it will cause harm to that other person within the community." *Id.* at 291. *See also Paolino v. Channel Home Centers*, 668 F.2d 721 (3d Cir. 1981) (minimum contacts analysis inapplicable for cases in which defendant's forum-related conduct caused the harm; in such cases, "specific foreseeability" is the applicable test).

Defendant's side of the ledger contains arguments equally powerful. First, KJAI's contacts with the Commonwealth of Pennsylvania are indeed negligible. Numerous courts have declined to assert jurisdiction in cases in which defendants' contacts with the forum state were far more substantial than KJAI's contacts with Pennsylvania in this case. *See, e.g., Benjamin v. Western Boat Building Corp.*, 472 F.2d 723 (5th Cir.) (Washington defendant not subject to jurisdiction in Louisiana, notwithstanding factual finding that defendant had communicated by telephone and letter with Louisiana plaintiff and had advertised in Louisiana), *cert. denied* 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973); *Bernardi Brothers, Inc. v. Pride Manufacturing, Inc.*, 427 F.2d 297 (3d Cir. 1970) (no jurisdiction although defendant corporation maintained a manufacturer's representative in forum state who operated office out of his home).

Second, the Middle District of Pennsylvania decision in *Rusack* is readily distinguishable from the facts of this case. The allegedly defamatory letter in *Rusack* was not solicited by plaintiff's employer or sent at anyone's request. Defendant's sole purpose in sending the letter into the Commonwealth was to injure plaintiff's reputation. The defamatory impact of the letter was exclusively in Pennsylvania, a consideration that led the court to emphasize that all necessary proof was to be found in the Commonwealth. The facts of this plaintiff's claim portray a far different situation.

Defendant's contacts with Pennsylvania in this case were neither initiated by the defendant nor arose from the purpose of defaming plaintiff. The principal defamatory impact, if any, at least in quantitative terms, lies presumably in California, the state in which over ninety percent of the magazine's subscribers reside.

■ Third, a three person company with small circulation and low revenues, cannot be said to have injected its product into interstate commerce so as to make it "reasonably foreseeable" that it should be haled into court in any jurisdiction in which a few of its copies were mailed. *See Jacobs,* 493 F.Supp. at 48 ("defendant is not a large corporation which intentionally places its product in interstate commerce for the purpose, or at least the expectation that it will be purchased in whatever state it may find itself"). In short, defendant has apparently done everything within its power to ensure that it cannot be sued in the Commonwealth of Pennsylvania, short of refusing to sell copies of its magazines to Pennsylvania citizens. No court of which I am aware has insisted that a defendant affirmatively eliminate all connections with the forum in order to avoid being subjected to its jurisdiction.[7]

■ Finally, defendant's home state, California, has a strong "interest in protecting its citizens from distant, possibly harassing litigation." *World-Wide Volkswagen Corp.,* 444 U.S. at 292, 100 S.Ct. at 564.

As noted above, on the facts of this case, if I were to balance KJAI's interest against the interest of the forum state (which, in turn, must be counterbalanced against the constitutional concept of fundamental fairness and the defendant's own state's interest in protecting its citizens from distant litigation), I would be presented with an extremely close question under the due process standards elucidated above. One additional consideration present in this case, however, tilts the scales decisively in defendant's favor. This additional consideration is the first amendment to the United States Constitution and it is raised by the facts of this case because defendant KJAI is the publisher of a magazine.

The chilling effect that imposition of jurisdiction over any publisher would have on the free exercise of first amendment rights mandates a subtly different due process analysis. If a publisher stands in peril of being haled into court in any jurisdiction simply because a citizen of that jurisdiction came into possession of one of its publications, no speech would be disseminated beyond the territory in which the speaker can afford to litigate. Thus, if courts freely found *in personam* jurisdiction over publishers of first amendment articles under the same standards imposed on commercial entities, the citizens of each state would soon find themselves with access only to those publications with in-state revenues sufficiently high to justify the cost of litigation within that particular jurisdiction. In short, the legendary "free marketplace of ideas," a cornerstone of our constitutional scheme, would be transformed into a marketplace of ideas limited to those who can afford the cost of litigation in that particular marketplace.

Courts confronted with this inherent tension between the first and fourteenth amendments to the Constitution have generally required a more substantial presence within the forum state in order to sustain *in personam* jurisdiction over publishers and other purveyors of "first amendment articles." *See, e.g., Buckley v. New York Post Corp.,* 373 F.2d 175 (2d Cir. 1967) (where risk of chilling distribution of publication is not balanced by circulation within the forum, first amendment provides independent basis for dismissal); *Curtis Publishing Co. v. Golino,* 383 F.2d 586, 592 (5th Cir. 1967) ("it is reasonable to assume that due to the lack of substantial revenues derived from

---

7. It is this consideration, coupled with the second consideration discussed above, that distinguishes this case from the Third Circuit's recent decision in *Paolini* discussed earlier. In short, it was not "clearly and specifically foreseeable" to KJAI that Pennsylvania would be a "place of harm." *See Paolini,* slip op. at 5.

sales in distant forums, the strong possibility of lawsuits will have a chilling effect upon the desire of the newspaper to promote the distribution of publications expressing views unpopular in such forums"); *The New York Times Company v. Connor*, 365 F.2d 567, 572 (5th Cir. 1966) ("First Amendment considerations . . . require a greater showing of contact to satisfy the due process clause . . . 'because of the inherent danger or threat to the free exercise of the right of freedom of the press if jurisdiction in every state can be inferred from minimal contacts' "); *Gonzales v. The Atlanta Constitution*, No. 78–C269 (M.D.Ill. Jan. 10, 1979) ("potential chilling effect on the exercise of First Amendment press freedoms that would result from requiring newspaper publishers to defend libel suits in every distant forum where a negligible number of copies of their newspapers are circulated constitutionally precludes the exercise of jurisdiction").[8]

When pressed at oral argument, plaintiff's counsel conceded that her position could be reduced to the proposition that the cases noted above were incorrectly decided. Neither she nor counsel for defendant could cite me any authority contrary to those decisions. Yet, the Tenth Circuit purports to be in complete disagreement with the Fifth Circuit on this issue. *See Anselmi v. Denver Post, Inc.*, 552 F.2d 316, 323–25 (10th Cir.), *cert. denied sub nom. Times Mirror Co. v. Anselmi*, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977). The court in that case states:

> Whether there is a First Amendment defense is to be determined when the case is tried and ought not as a matter of reason and logic affect the outcome of a personal jurisdiction question such as we have here . . . . To hold as did the Fifth Circuit that the First Amendment has to be thrown on the scales as an added impediment in media cases gives the media an additional arrow which is not appropriate in a determination as to whether the con-

tacts are legally sufficient to constitute due process.

*Id.* at 324.

In the absence of any binding Third Circuit precedent on this issue, I choose to follow the more persuasive reasoning and logic of the Fifth Circuit. The Tenth Circuit's view fails to lend any substantial weight to the chilling effect on the distribution of first amendment articles that its decision portends. Further, the facts of *Anselmi* are so distinguishable from the instant case that its broad statements on the inapplicability of the first amendment are forgivable: the defendant Los Angeles Times was a national paper, it sold syndications in the forum, it actively solicited subscriptions and advertisements in the forum, three reporters were sent to the forum to write the subject story, and the story bore a dateline from the forum.

■ In sum, I hold that plaintiff has not met her burden of pleading and proving facts establishing my jurisdiction over defendant KJAI under applicable legal precedents. In this regard, I find that hailing KJAI, a distributor of first amendment articles, into a remote forum would offend traditional notions of fair play and substantial justice. Although I agree with plaintiff that Pennsylvania's interest in resolving this dispute is substantial (because of the Commonwealth's interest in protecting its residents from out-of-state tortfeasors), I find Pennsylvania's interest to be outweighed in this case by defendant's interests, the interests of the state of California in protecting its citizens from suit in remote jurisdictions, and the policies of the first amendment.

---

8. I note that the contacts with the forum of the defendant publishers in all of these cases were far more extensive than the contacts of KJAI with Pennsylvania in this case. These defendants often advertised in, solicited business in, and sent reporters to the constitutionally impermissible forums.